# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| OYSTER OPTICS, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>INFINERA CORPORATION,<br><br>*Defendant.* | Civil Action No. 2:18-cv-00206-JRG |
| OYSTER OPTICS, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>INFINERA CORPORATION,<br><br>*Defendant.* | Civil Action No. 2:16-cv-01295-JRG |

**PLAINTIFF OYSTER OPTICS, LLC'S**
**OPENING CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND ....................................................................................................................1

III. CLAIM CONSTRUCTION PRINCIPLES ...........................................................................2

IV. THE TERM "OUTPUT DATA" SHOULD BE ACCORDED ITS PLAIN AND ORDINARY MEANING ........................................................................................................4

V. CONCLUSION .......................................................................................................................6

**I.     INTRODUCTION**

This *Markman* proceeding concerns only a single term, "output data," from a single patent, U.S. Patent 8,913,898 (the "'898 patent"). This term has a plain and ordinary meaning, readily understood by a lay jury. Nothing in the claims, the specification, or elsewhere in the intrinsic record provides a definition for this term or suggests it should have a meaning that is in any way narrower than its full ordinary and customary meaning. In short, nothing in the record suggests that the term requires any construction at all. Indeed, in the prior *Markman* proceeding involving Infinera and the same claims of the '898 patent, no party asked the Court to construe the term.

If the Court does construe the term "output data," it should be construed in accordance with its plain meaning and the surrounding language of the claim, as it is in Oyster's proposed construction. Infinera's proposed construction seeks to narrow the term from its plain meaning by importing limitations that appear solely in the specification of the '898 patent. This is contrary to well-established Federal Circuit precedent, and Infinera's proposal must accordingly be rejected.

**II.    BACKGROUND**

This is the second time that this Court has been asked to construe the '898 patent in a case between Oyster and Infinera. In the prior consolidated case, *Oyster Optics, LLC v. Coriant America Inc. et al.*, Case No. 2:16-cv-01302-JRG, the parties agreed on a construction of one term in the '898 patent and disputed the construction of four terms in the patent. (Case No. 2:16-cv-01302-JRG, P.R. 4-3 Statement, Dkt. 145 at 3, 9.) After conducting a *Markman* hearing, the Court issued an order construing each of these disputed terms. (Case No. 2:16-cv-01302-JRG, Claim Construction Memorandum and Order, Dkt. 190.) Subject to certain reservations, Oyster and Infinera have agreed by stipulation that they will not ask the Court to revisit the claim terms that were addressed in the prior *Markman* proceeding. (Case No. 2:16-cv-01302-JRG, Joint Stipulation, Dkt. 595-1, ¶ 8.)

The Court is familiar with the technology at issue from the *Markman* proceeding in the prior consolidated case and from its consideration of other motions brought in that case. Neither party is relying upon expert declarations or other extrinsic evidence to support its positions in this second *Markman* proceeding. (P.R. 4-3 Statement, Dkt. 52, Ex. 1.) Oyster submits that the single dispute presented in this second proceeding can be decided by the straightforward application of Federal Circuit law, without any need to deeply consider the underlying technology. However, to the extent that the Court would find an introduction to the technology helpful, Oyster respectfully directs the Court to the Technology Tutorial it submitted in that case on September 15, 2017 and to pages 2-5 of its prior opening *Markman* brief (Case No. 2:16-cv-01302-JRG, Oyster Opening Claim Construction Brief, Dkt. 157 at 2-5).

**III. CLAIM CONSTRUCTION PRINCIPLES**

The "claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). Thus, "[q]uite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular terms." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). "To begin with, the context in which a term is used in the asserted claim can be highly instructive." *Id*.

When conducting a claim construction inquiry, "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). This is because claim construction is "not an obligatory exercise in redundancy." *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Where a term is used in accordance with its plain meaning, the court should not re-characterize it using different language. *See Mentor H/S, Inc. v. Med. Device*

*Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) ("[T]he court properly instructed the jury that these terms should receive their ordinary meanings.").

To the contrary, there is a "heavy presumption" that claim terms carry their "full ordinary and customary meaning, unless [the accused infringer] can show the patentee expressly relinquished claim scope." *Epistar Corp. v. ITC*, 566 F.3d 1321, 1334 (Fed. Cir. 2009). And because "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention," the task of comprehending the claims often "involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1313-14.

"There are only two exceptions" in which claim terms are not given their "full ordinary and customary meaning": "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution."). *Thorner v. Sony Computer Entertainment Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). The patent specification can also shed light on the meaning of claim terms. *Phillips*, 415 F.3d at 1315. However, without clear and unambiguous disclaimer or lexicography by the patentee, courts "do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment." *JVW Enters.*, 424 F.3d at 1335. Similarly, statements during patent prosecution do not limit the claims unless the statement is a "clear and unambiguous disavowal of claim scope." *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003) ("[W]e have thus consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope.").

3

## IV. THE TERM "OUTPUT DATA" SHOULD BE ACCORDED ITS PLAIN AND ORDINARY MEANING

| Oyster's Proposed Construction | Infinera's Proposed Construction |
|---|---|
| No construction necessary.<br><br>In the alternative, if construed: "data outputted by the receiver" | "an electronic data stream recovered from the second optical signal" |

The term "output data" appears solely in the following claim limitation, found in both claims 1 and 14 of the '898 patent:

> a receiver configured to receive a second optical signal from the second optical fiber and to convert the second optical signal to **output data**;

(Ex. 1, '898 patent at 6:62-64, 8:4-6.)

This term does not require construction. The word "data" has a plain and ordinary meaning familiar to lay jurors and is used by the '898 patent in a way consistent with that meaning. Indeed, Infinera does not propose to define the word "data," as its own construction itself uses the word "data." Likewise, nothing in Infinera's proposed construction clarifies what the modifier "output" means. Nor is there any need for such clarification. Like "data," "output" has a plain and ordinary meaning familiar to lay jurors. Interpreting the term "output data" in these claims requires nothing more than "the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1313-14. There is no need to re-characterize this simple phrase in terms of other words. *Mentor*, 244 F.3d at 1380; *United States Surgical*, 103 F.3d at 1568. Presumably, this is the reason that neither Infinera nor any of the other nine defendants asked the Court to construe "output data" in the earlier consolidated case where this Court construed the '898 patent. (Case No. 2:16-cv-01302-JRG, P.R. 4-3 Statement, Dkt. 145.)

To the extent that the Court believes that it is appropriate to construe this term, however, Oyster's proposed construction is the correct one. The construction "data outputted by the receiver" follows the plain meaning of "output data," but clarifies the term "output" by explaining

what it is that is doing the outputting (i.e., the receiver). This accords with the claims, which explain that the receiver is configured to "convert the second optical signal to output data." (Ex. 1, '898 patent at 6:62-64.)

Oyster's proposed construction mirrors the compromise construction of the closely related term "input data" that Oyster and Infinera have already agreed to: "data inputted to the transmitter." (P.R. 4-3 Statement, Dkt. 52 at 2.) The agreed term "input data" appears in the context of a claim reciting a "transmitter . . . configured to receive **input data**." (Ex. 1, '898 patent at 6:55-56.) Like Oyster's proposed construction of "output data," the agreed construction of "input data" follows the plain meaning of the term, but clarifies "input" by explaining where the inputting is occurring (i.e., the transmitter), in accord with the surrounding claim language. If a construction that follows the plain meaning of the claim is appropriate for "input data," then Oyster's proposal following the plain meaning is appropriate for "output data," as well.

Infinera's proposal is an improper attempt to import limitations into the claims that appear only in the specification of the '898 patent. Nothing in the plain meaning of "output data" or the surrounding claim language speaks to the form of the data ("electronic" versus any way that data can be represented), whether the data appears in a "stream," or where that data was "recovered" from. Indeed, the surrounding claim language states that the "output data" is the result of "convert[ing] the second optical signal." (Ex. 1, '898 patent at 6:62-64, 8:4-6.) To the extent that "recover[ing]" from the second optical signal is different than "convert[ing]" that signal, then Infinera's proposal is contrary to the express words of the claim. If "recover[ing]" and "convert[ing]" mean the same thing, then Infinera's proposal is redundant and risks confusion.

Each of Infinera's new limitations originates in a single sentence of the "Detailed Description" section of the '898 patent specification:

5

> Optical receiver **32** converts the optical signal from optical to electronic form to recover the electronic data stream **34** as appropriate for the optical modulation technique employed.

(Ex. 1, '898 patent at 5:2-4.) The section where this sentence appears describes "[a] preferred embodiment of the present invention." (*Id.* at 3:65-66.) Nothing in this section suggests that the features of this preferred embodiment are mandatory parts of the claimed invention. Indeed, other parts of the same section describe features such as a "phase modulator" (*id.* at 4:36) or an "OTDR" (*id.* at 4:58) that are claimed only in dependent claims (*id.* at 7:7-8, 7:34-36, 8:19-20, 8:40-42).

The sentence that Infinera draws its construction from does not purport to define "output data." Indeed, the phrase "output data" does not appear in that sentence or anywhere else in the "Detailed Description" section of the specification. Nowhere in the specification (or anywhere else in the intrinsic record) has Oyster made any statement to limit the full scope of the term. Accordingly, neither of the exceptions to the rule that claim terms have their "full ordinary and customary meaning" is satisfied, and Infinera's effort to narrow the term from its plain meaning should be rejected. *See Thorner*, 669 F.3d at 1365.

## V. CONCLUSION

For the reasons set forth above, Oyster respectfully asks that the Court decline Infinera's request to re-write the simple term "output data." To the extent that the Court does expressly construe the term, the term should be given its full ordinary and customary meaning. It should not be narrowed by importing limitations from the specification, as Infinera proposes.

6

Dated: March 22, 2019    /s/ *Reza Mirzaie*

    Marc A. Fenster (CA SBN 181067)
    E-mail: mfenster@raklaw.com
    Reza Mirzaie (CA SBN 246953)
    E-mail: rmirzaie@raklaw.com
    Neil A. Rubin (CA SBN 250761)
    Email: nrubin@raklaw.com
    Theresa M. Troupson (CA SBN 301215)
    E-mail: ttroupson@raklaw.com
    RUSS, AUGUST & KABAT
    12424 Wilshire Boulevard, 12th Floor
    Los Angeles, CA 90025
    Telephone:   310/826-7474
    Facsimile:    310/826-6991

    T. John Ward, Jr. (TX SBN 00794818)
    E-mail: jw@wsfirm.com
    Claire Abernathy Henry (TX SBN 24053063)
    E-mail: claire@wsfirm.com
    Andrea L. Fair (TX SBN 24078488)
    E-mail: andrea@wsfirm.com
    WARD, SMITH & HILL, PLLC
    P.O. Box 13231
    Longview, Texas 75601
    Tele: 903/757-6400
    Facsimile 903/757-2323
    *Attorneys for Plaintiff*
    OYSTER OPTICS, LLC

## CERTIFICATE OF SERVICE

  I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on March 22, 2019, with a copy of this document via the Court's ECF system.

                    /s/ *Reza Mirzaie*