# EXHIBIT A

# Infinera's Motion for Summary Judgment

Oyster Optics, LLC

v.

Infinera Corp.

2:16-cv-01295-JRG, 2:18-cv-00206-JRG

**The Hon. Rodney Gilstrap**
**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS – MARSHALL DIVISION**
**June 12, 2019**



# Summary of the Argument

- Unambiguous agreement grants license and release to Coriant and "Affiliates"

- "Affiliates" expressly defined to include "any person, now or in the future" controlling Coriant, and specifically negotiated to cover future affiliates

- Undisputed that Infinera now controls Coriant

- Therefore, the license and release apply to Infinera

- No factual disputes in applying unambiguous contract under New York Law

Oyster-Coriant Settlement and License Agreement

## SETTLEMENT and LICENSE AGREEMENT

This Settlement and License Agreement ("Agreement"), effective as of June 27, 2018 ("Effective Date"), is entered into by: Oyster Optics, LLC ("Oyster"), having offices at 11921 Freedom Dr., Suite 550, Reston, Virginia 20190; and Coriant (USA) Inc., Coriant North America, LLC, and Coriant Operations, Inc., each having offices at 1415 W. Diehl Road, Naperville, IL 60563 (collectively, the "Coriant Defendants"). Each of the parties is individually the "Party," and they are referred to collectively as the "Parties."

WHEREAS, Oyster and the Coriant Defendants are parties in litigation pending in the United States District Court for the Eastern District of Texas, Lead Case No. 2:16-cv-01302-JRG-RSP ("Litigation"), in which Oyster has asserted infringement of U.S. Patent Nos. 6,594,055; 6,469,816; 6,476,952; 7,099,592; 8,913,898; 7,620,327; 8,374,511; and 9,363,012 ("Patents-in-Suit") by the Coriant Defendants;

. . .

4

Coriant Settlement Unambiguously Defines "Affiliate" to include Future Parents

1.1.    "Affiliate" means any Person, now or in the future, which: (i) is under the Control of a Party hereto; or (ii) has Control of a Party hereto; or (iii) is under common Control with a Party hereto. For purposes of this Affiliate definition, "Control" means either: (a) that fifty percent (50%) or more of the controlled entity's shares or ownership interest representing the right to make decisions for such entity are owned or controlled, directly or indirectly, by the controlling entity; or (b) the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a corporation or other entity whether through ownership of voting securities, by contract, or otherwise.  For the avoidance of doubt and without limiting the foregoing, Affiliates of the Coriant Defendants include without limitation Coriant International Group LLC and all direct and indirect subsidiaries of Coriant International Group LLC.

Ex. A at 2 (¶ 1.1)

5

No Dispute Infinera is a "Person, now or in the future" that has "Control" of Coriant

1.5.    "Person" means any individual, trust, corporation, partnership, joint venture, limited liability company, proprietorship, association, unincorporated organization, or other legal or governmental entity.

Ex. A at 2 (¶ 1.5).

1.1.    "Affiliate" means any Person, now or in the future, which: (i) is under the Control of a Party hereto; or (ii) has Control of a Party hereto; or (iii) is under common Control with a Party hereto. For purposes of this Affiliate definition, "Control" means either: (a) that fifty percent (50%) or more of the controlled entity's shares or ownership interest representing the right to make decisions for such entity are owned or controlled, directly or indirectly, by the controlling entity; or (b) the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a corporation or other entity whether through ownership of voting securities, by contract, or otherwise.  For the avoidance of doubt and without limiting the foregoing, Affiliates of the Coriant Defendants include without limitation Coriant International Group LLC and all direct and indirect subsidiaries of Coriant International Group LLC.

Ex. A at 2 (¶ 1.1)

4.      License Grant.

    4.1.    Subject to the terms and conditions of this Agreement, Oyster hereby grants to each of the Coriant Defendants, their Affiliates, a non-exclusive, non-transferable, non-assignable (except as provided herein), royalty-free, irrevocable, perpetual, and fully paid-up license, without the right to sublicense, in the Territory under the Licensed Patents, to make, have made, use, offer for sale, sell, import, export, distribute, or otherwise supply, provide or dispose of, the Licensed Product.

Ex. A at 5 (¶ 4.1)

# "Licensed Product" includes All Infinera's Accused Products

1.4.   **"Licensed Product"** means any Subject Matter made, have made, used, offered for sale, sold, imported, exported, distributed, or otherwise supplied, provided or disposed of, in the U.S. at any time, directly or indirectly by or for or on behalf of any of the Coriant Defendants, their **Affiliates,** or respective predecessors, predecessors-in-interest, successors, or successors-in-interest, and combinations of the foregoing.

Ex. A at 2 (¶ 1.4)

1.7.   **"Subject Matter"** means, regardless of origin, any method(s), process(es), product(s), product line(s), service(s), device(s), system(s), component(s), hardware, software and/or software algorithm, and/or combination(s) of any one or more of the foregoing.

Ex. A at 2 (¶ 1.7)

# No Dispute that All Patents Asserted Against Infinera Are "Licensed Patents"

> 1.3. **"Licensed Patents"** means: (i) the Patents-in-Suit (including without limitation all applications therefor); and (ii) any and all classes and types of related U.S. patents, U.S. patent applications and U.S. patent rights including without limitation all divisions, continuations, continuations-in-part, reissues and reexaminations or extensions of such patents and patent applications. Notwithstanding the foregoing, Licensed Patents include, without limitation, the patents and applications set forth in Appendix B. Each of the Licensed Patents is individually a "Licensed Patent" as the term is used herein.

Ex. A at 1-2 (¶ 1.3)

# No Dispute that All Patents Asserted Against Infinera Are "Licensed Patents"

## APPENDIX B

### ~~Representative~~ List of Licensed Patents

| Title | CTR Serial# | Filed Date | Patent # | Issue Date |
|---|---|---|---|---|
| FIBER OPTIC TELECOMMUNICATIONS CARD WITH ENERGY LEVEL MONITORING | US 15/159,282 | 8/18/2017 | 9,749,040 * | 8/29/17 |
| FIBER OPTIC TELECOMMUNICATIONS CARD WITH ENERGY LEVEL MONITORING | US 13/762,717 | 2/8/2013 | 9,363,012 | 6/7/2016 |
| FIBER OPTIC TELECOMMUNICATIONS CARD WITH ENERGY LEVEL MONITORING | US 13/759,650 | 2/5/2013 | 8,913,898 | 12/16/2014 |
| FIBER OPTIC TELECOMMUNICATIONS CARD WITH ENERGY LEVEL MONITORING | US 12/590,185 | 11/4/2009 | 8,374,511 | 2/12/2013 |
| FIBER OPTIC TELECOMMUNICATIONS CARD WITH ENERGY LEVEL MONITORING | US 10/188,643 | 7/3/2002 | 7,620,327 | 11/17/2009 |

• • •

\* No longer asserted.

Ex. A at 13 (Appx. B)

10

1.4.   "Licensed Product" means any Subject Matter made, have made, used, offered for sale, sold, imported, exported, distributed, or otherwise supplied, provided or disposed of, in the U.S. at any time, directly or indirectly by or for or on behalf of any of the Coriant Defendants, their Affiliates, or respective predecessors, predecessors-in-interest, successors, or successors-in-interest, and combinations of the foregoing.

Ex. A at 2 (¶ 1.4)

11

# The Agreement's Release Also Applies to All "Affiliates," Including Infinera

Oyster, on behalf of itself and its Affiliates, and their respective predecessors, predecessors-in-interest, successors, successors-in-interest, and assigns, . . . does hereby forever release and discharge the Coriant Defendants, their Affiliates, and their respective predecessors, predecessors-in-interest, successors, successors-in-interest, and assigns, . . . from any and all claims, demands, matters, rights or causes of action asserted or assertable without regard to jurisdiction questions, in the Territory, whether known or unknown, arising from activities in the Territory up to the Effective Date, whether or not raised in the Litigation, based on the Licensed Patents or based on the conduct of the Litigation . . .

Ex. A at 2-3 (¶ 3.1)

# Agreement Repeats Release of All "Affiliates," Including Infinera

... and also including without limitation any asserted or unasserted claims of infringement of any of the Licensed Patents on account of, in whole or in part, any method, process, product, product line, service, device, system, component, hardware, software and/or software algorithm, and/or combination of any one or more of the foregoing, made, have made, used, offered for sale, sold, imported, exported, distributed, or otherwise supplied, provided or disposed of, directly or indirectly, by or for or on behalf of any of the Coriant Defendants and their Affiliates, prior to the Effective Date.

Ex. A at 3 (¶ 3.1) (cont'd)

13

release to each of the Coriant Defendants and their Affiliates. The scope of that release is as follows: Oyster, on behalf of itself and its Affiliates, and their respective predecessors, predecessors-in-interest, successors, successors-in-interest, and assigns, together with their respective past, present, and future officers, directors, employees, attorneys, agents, representatives, shareholders, partners, subsidiaries, parents, heirs, executors, and administrators, does hereby forever release and discharge the Coriant Defendants, their Affiliates, and their respective predecessors, predecessors-in-interest, successors, successors-in-interest, and assigns, together with their respective past, present, and future officers, directors, employees, attorneys, agents, representatives, shareholders, subsidiaries, parents, heirs, executors, and administrators, from any and all claims, demands, matters, rights or causes of action asserted or assertable without regard to jurisdiction questions, in the Territory, whether known or unknown, arising from activities in the Territory up to the Effective Date, whether or not raised in the Litigation,

Ex. A at 2-3 (¶ 3.1)

14

# Coriant Release Applies to Oyster's Claims Against Infinera

## Licensed Patents

| FIBER OPTIC TELECOMMUNICATIONS CARD WITH ENERGY LEVEL MONITORING | US 13/759,650 | 2/5/2013 | 8,913,898 | 12/16/2014 |
|---|---|---|---|---|
| FIBER OPTIC TELECOMMUNICATIONS CARD WITH ENERGY LEVEL MONITORING | US 10/188,643 | 7/3/2002 | 7,620,327 | 11/17/2009 |

Ex. A at 13 (Appx. B)

**=**

## Asserted Patents

applications of leading edge fiber optics technology. Mr. Peter ("Rocky") Snawerdt was at Oyster Optics, Inc. when he invented the subject matter of U.S. Patent Nos. 7,620,327, 8,913,898, and 9,749,040. (collectively, "Asserted Patents" or "patents-in-suit").

Complaint (Dkt. 1) at 3 (¶ 6)

## Effective Date

### SETTLEMENT and LICENSE AGREEMENT

This Settlement and License Agreement ("Agreement"), effective as of June 27, 2018 ("Effective Date"), is entered into by: Oyster Optics, LLC ("Oyster"), having offices at 11921

• • •

from any and all claims, demands, matters, rights or causes of action asserted or assertable without regard to jurisdiction questions, in the Territory, whether known or unknown, arising from activities in the Territory up to the Effective Date, whether or not raised in the Litigation.

Ex. A at 1, 3 (Preamble, (¶ 3.1)

## Cause of Action Arisen

### JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Oyster requests a trial by jury of any issues so triable by right.

Dated: May 15, 2018                Respectfully submitted,

Complaint (Dkt. 1) at 16

## Oyster Has Alleged No New Claims Since the Agreement



*Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1379 (Fed. Cir. 2008)

"Under the law of the Federal Circuit, <u>an infringement claim … is the 'same claim' … if the accused products are 'essentially the same</u>.' Accused products are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'"

# Oyster Cannot Avoid the Release's Broad Language by Pointing to Parol Evidence



*Middle East Banking Co. v. State Street Bank Int'l*, 821 F.2d 897, 907 (2d Cir. 1987)

"When the words of the release are of general effect the release is to be <u>construed most strongly against the releasor</u>, and the burden is on the releasor to establish that the release should be limited.  The traditional bases for setting aside written agreements, namely duress, illegality, fraud, or mutual mistake, must be established or else the release stands.

# A "Forever" Release Is Not Limited to Past Claims



*Accolade Systems LLC v. Citrix Systems, Inc.,* No. 6:07-cv-48, 2009 WL 1514426 at *4 (E.D. Tex. May 29, 2009)

"Accolade argues that the release provision only applies to past claims. However, the release provision … clearly specifies that the release lasts 'forever.' … 'Forever' plainly means never ending … Thus, the clear and plain language of the release provision refutes Accolade's argument."

# The Oyster Release Is Very Similar to the Accolade Release

Oyster, on behalf of itself and its Affiliates, and their respective predecessors, predecessors-in-interest, successors, successors-in-interest, and assigns, ... does hereby forever release and discharge the Coriant Defendants, their Affiliates, and their respective predecessors, predecessors-in-interest, successors, successors-in-interest, and assigns, ... from any and all claims, demands, matters, rights or causes of action asserted or assertable without regard to jurisdiction questions, in the Territory, whether known or unknown, arising from activities in the Territory up to the Effective Date, whether or not raised in the Litigation, based on the Licensed Patents or based on the conduct of the Litigation ...

Ex. A at 2-3 (¶ 3.1)

[Accolade. . . hereby releases, acquits and forever discharges Cisco and its Affiliates from any and all actions, causes of action, claims or demands, liabilities, losses, damages, attorneys' fees, court costs, or any other form of claim or compensation for known and unknown acts, including without limitation any claim of infringement of the Licensed Patents, that happened prior to the Effective Date, . . .

*Accolade Systems LLC v. Citrix Systems, Inc.,* **No. 6:07-cv-48, 2009 WL 1514426 at \*4 (E.D. Tex. May 29, 2009)**

19

# The Agreement Explicitly Extends Its Benefits to Future Affiliates

1.1.    "Affiliate" means any Person, now or in the future, which: (i) is under the Control of a Party hereto; or (ii) has Control of a Party hereto; or (iii) is under common Control with a Party hereto. For purposes of this Affiliate definition, "Control" means either: (a) that fifty

Ex. A at 2 (¶ 1.1)

This Agreement shall be binding upon and inure to the benefit of the Parties and their present and future Affiliates, and the heirs, administrators, executors, permitted successors, permitted successors-in-interest, and permitted assigns of the Parties and their Affiliates.

Ex. A at 9 (¶13.3)

# Application of Unambiguous Terms Is a Question of Law Ripe for Summary Judgment



**_Greenfield v. Philles Records,_ 98 N.Y.2d 562, 569 (N.Y. 2002)**

"[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms. Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide."

- Oyster relies on ¶13.2 of the Agreement, but that provision only applies to <u>assignments</u>:

> 13.2.   This Agreement shall be <u>separately assignable</u> by the Coriant Defendants: (i) to any of their Affiliates; and (ii) to any entity that either acquires all or substantially all of the assets and/or business of the Coriant Defendants to which this Agreement relates or is a partner in a merger, consolidation, equity exchange or reorganization with respect to such business, but in either event only as to (a) Licensed Product released or substantially developed before the date of such acquisition or other transaction, and (b) any successors of the Licensed Product of (a); and (iii) with the written consent of Oyster, which such consent shall not be unreasonably withheld.

Ex. A at 8 (¶13.2)

22

- **The Coriant Defendants still exist and have not assigned the agreement**
- **Oyster has no contrary evidence, only attorney argument**

> "Coriant (USA) Inc., Coriant North America, LLC, and Coriant Operations, Inc. each exist as separate legal entities after their acquisition by Infinera."

Feller Declaration, Ex. B at 2 (¶5)

> "None of Coriant (USA) Inc., Coriant North America, LLC, and Coriant Operations, Inc. have separately assigned the Settlement and License Agreement to Infinera, nor are any of them under an obligation to do so."

Feller Declaration, Ex. B at 2 (¶8)

> 13.2.   This Agreement shall be separately assignable by the Coriant Defendants: (i) to any of their Affiliates; and (ii) to any entity that either acquires all or substantially all of the assets and/or business of the Coriant Defendants to which this Agreement relates or is a partner in a merger, consolidation, equity exchange or reorganization with respect to such business, but in either event only as to (a) Licensed Product released or substantially developed before the date of such acquisition or other transaction, and (b) any successors of the Licensed Product of (a); and (iii) with the written consent of Oyster, which such consent shall not be unreasonably withheld.

Ex. A at 8 (¶13.2)

- Optional rights given to Coriant, but not pursued here
- Coriant can assign to an Affiliate or to an asset purchaser but chose not to do so
- Oyster cannot manufacture an issue by wishing Coriant had executed an assignment

24

# Even If Coriant Were Dissolved, Infinera Would Be a Successor, Not an Assignee

13.    Transferability, <mark>Successors, and Assigns</mark>.

...

13.3.    Except as expressly permitted herein, any purported assignment or transfer of this Agreement (in whole or in part) to any Affiliate or Third Party shall be invalid, null and void *ab initio* and be of no legal effect.  This Agreement shall be binding upon and inure to the benefit of the Parties and their present and future Affiliates, and the heirs, administrators, executors, <mark>permitted successors</mark>, permitted successors-in-interest, <mark>and permitted assigns</mark> of the Parties and their Affiliates.

Ex. A at 8-9 (¶¶13, 13.3)

## Oyster's Arguments Regarding Circumvention and Implied Covenant Are Meritless

- Oyster cannot create an implied covenant in the face of negotiated terms



*Tuscan/Lehigh Dairies, Inc. v. Beyer Farms, Inc.*, 136 A.D.3d 799, 802 (N.Y. App. Div. 2016)

"The implied covenant cannot be employed to impose new contract terms that could have been bargained for but were not. … A claim for breach of the implied covenant of good faith and fair dealing <u>cannot be based upon conduct authorized by the parties' contract</u>."

# Oyster's "Selling to Yourself" Argument is Unavailing

- Oyster argues that Infinera breached Coriant's representation and warranty by selling components to itself
- Strained reading that lacks any record support

successors, or successors-in-interest.  The Coriant Defendants represent and warrant that none of the Coriant Defendants nor their Affiliates sell or supply optical-telecommunications transceivers, or components for optical-telecommunications transceivers, to any of the other named defendants in the Consolidated Litigation, although the Parties to this Agreement agree that the remedy for any breach by the Coriant Defendants of this representation and warranty is limited to an exclusion from the scope of this Paragraph 3.1 of such other named defendants with respect to those sales or supply that give rise to such breach.

Ex. A at 3 (¶3.1)

27

# In Any Event, Oyster Lacks Any Evidence of a Breach of the Rep. & Warranty



**_Wells v. Minn. Life Ins. Co._, 855 F.3d 885, 889 (5th Cir. 2018)**

"Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."

# Oyster's Fanciful Breach of the Rep & Warranty Would Not Affect the Accused Products

successors, or successors-in-interest.  The Coriant Defendants represent and warrant that none of the Coriant Defendants nor their Affiliates sell or supply optical-telecommunications transceivers, or components for optical-telecommunications transceivers, to any of the other named defendants in the Consolidated Litigation, although the Parties to this Agreement agree that the remedy for any breach by the Coriant Defendants of this representation and warranty is limited to an exclusion from the scope of this Paragraph 3.1 of such other named defendants with respect to those sales or supply that give rise to such breach.

Ex. A at 3 (¶3.1)

- No evidence any accused product incorporates components "with respect to those sales or supply that give rise to such [alleged] breach"

# Oyster's Intent Arguments Do Not Justify Departure from the Agreement's Plain Language



**_Thalier v. LaRocca_**, 174 A.D.2d 731, 733 (N.Y. App. Div. 1991)

"Where … the language with respect to the parties' intent is clear and unambiguous, it will be given effect, <u>regardless of one party's claim that he intended something else</u>."

# Oyster's Intent Arguments Do Not Justify Departure from the Agreement's Plain Language



**Booth v. 3669 Delaware, 703 N.E.2d 757, 758 (N.Y. 1998)**

"Where, as here, the language of the release is clear and unambiguous … the release plaintiff signed <u>should be enforced according to its terms</u>."



**Cahill v. Regan, 5 N.Y.2d 292, 299 (N.Y. 1959)**

"The effect of a general release, in the absence of fraud or mutual mistake, <u>cannot be limited or curtailed</u>."

31

# Oyster's Intent Arguments Do Not Justify Departure from the Agreement's Plain Language



***Middle East Banking Co. v. State Street Bank Int'l*, 821 F.2d 897, 907 (2d Cir. 1987)**

"When, as here, a release is signed in a commercial context by parties in roughly equal bargaining position and with ready access to counsel, the general rule is that if the language of the release is clear, <u>the intent of the parties is indicated by the language employed</u>."

# The Agreement's Text Controls Over Oyster's Alleged Intent - Example



***Solid State Logic, Inc. v. Terminal Marketing Co.*, No. 02 CIV. 1378(DLC), 2002 WL 1586977 (S.D.N.Y. July 18, 2002)**

- <u>Facts</u>: Plaintiffs send letter stating intent to release only certain Wells Fargo debts, but enter into broadly-worded release covering all debts (*Id.* at *2)

- <u>Result</u>: All Wells Fargo debts were released, and the letter "is not persuasive evidence of the parties intent" because "the intent of the parties is indicated by the language employed" in the executed agreement (*Id.* at *4)

# Oyster Cannot Create a Factual Dispute By Relying on Parol Evidence

11. **Entire Agreement**. The terms and provisions contained in this Agreement constitute the entire agreement between the Parties and shall supersede all previous communications, representations, agreements, or understandings, either oral or written, between the Parties hereto with respect to the subject matter hereof. No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party, except as specifically set forth in this Agreement. No agreement or understanding varying or extending this Agreement shall be binding upon any Party hereto, unless in writing which specifically refers to this Agreement, signed by duly authorized officers or representatives of the respective Parties, and the provisions of this Agreement not specifically amended thereby shall remain in full force and effect.

"Entire Agreement" merger clause

Ex. A at 8 (¶11)



***Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013)**

"[W]here a contract contains a merger clause, a court is obliged to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing."

34

# Oyster Optics v. Infinera – Background of the Litigation and Infinera's License Defense



**11 APR 18**
Memorandum of Understanding ("MOU") reached during mediation

**19 APR 18**
Oyster sends initial draft settlement agreement

**27 APR 18**
Coriant edits "Affiliate" definition to add coverage for future affiliates

**11 MAY 18**
Oyster "accepted all edits," adds edits to other clauses

**14 MAY 18**
Coriant objects to Oyster's revisions

**25 MAY 18**
Coriant revises the agreement

**27 JUN 18**
Final agreement reached

2018

# April 27, 2018 - Coriant Redlines "Affiliate" Definition to Include Future Entities

| | |
|---|---|
| **From:** | Tim Meece |
| **Sent:** | Friday, April 27, 2018 3:58 PM |
| **To:** | 'Reza' |
| **Subject:** | FW: OO-Coriant draft settlement |
| **Attachments:** | DRAFT by Coriant - 27Apr2018 - Coriant SETTLEMENT and LICENSE AGREEMENT.....docx; |
| | Redline Compare of Coriant DRAFT Apr 27 against Oyster DRAFT Apr 19.docx |
| | |
| **Importance:** | High |

Hi Reza. Attached are Coriant's proposed revisions to the draft settlement agreement you sent, both in clean copy and a redline copy. Note that the attached redline copy was generated using the auto-compare feature of Word, so the edits may look slightly more extensive than they actually are. Coriant also may follow up shortly with some modifications to the current language relating to termination of the Coriant Defendants' participation in pending IPRs, but we did not want to delay getting you all of the other proposed revisions as we consider that language. Thanks and have a good weekend.

INF1161288

1.1. "Affiliate" means any ~~corporation, company,~~Person, now or ~~other entity~~in the future, which: (i) is under the Control of a Party hereto; or (ii) has Control of a Party hereto; or (iii) is under common Control with a Party hereto. For purposes of this Affiliate definition, "Control" means either: (a) that ~~more than~~ fifty percent (50%) or more of the controlled entity's shares or ownership interest representing the right to make decisions for such entity are owned or controlled, directly or indirectly, by the controlling entity~~.~~

INF1161289

# May 11, 2018 - Oyster Optics, LLC "accepted all [] edits"

| | |
|---|---|
| **From:** | Reza Mirzaie <rmirzaie@raklaw.com> |
| **Sent:** | Friday, May 11, 2018 12:53 PM |
| **To:** | Tim Meece |
| **Cc:** | Melissa R. Smith |
| **Subject:** | Re: Oyster v. Coriant:  Extension of Stay / Draft Settlement Agreement |
| **Attachments:** | OO redline to Coriant revised DRAFT .docx |

Hi,

Here are our edits.  Were accepted all your edits and then made our changes on top of those.  Our edits are relatively minor in number and we mostly deleted things to bring the agreement in line with our MOU, including the agreement to use the Fujitsu agreement for guidance.

Do you have time to discuss this today?

Thanks,
Reza

INF1161343

# May 11, 2018 - Oyster Optics, LLC Accepted Version of Affiliates was Final

1.1.  "Affiliate" means any Person, now or in the future, which: (i) is under the Control of a Party hereto; or (ii) has Control of a Party hereto; or (iii) is under common Control with a Party hereto. For purposes of this Affiliate definition, "Control" means either: (a) that fifty percent (50%) or more of the controlled entity's shares or ownership interest representing the right to make decisions for such entity are owned or controlled, directly or indirectly, by the controlling entity; or (b) the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a corporation or other entity whether through ownership of voting securities, by contract, or otherwise. For the avoidance of doubt and without limiting the foregoing, Affiliates of the Coriant Defendants include without limitation Coriant International Group LLC and all direct and indirect subsidiaries of Coriant International Group LLC.

INF1161345 (Oyster Optic LLC's May 11, 2018, Accepted Edits)

1.1.  "Affiliate" means any Person, now or in the future, which: (i) is under the Control of a Party hereto; or (ii) has Control of a Party hereto; or (iii) is under common Control with a Party hereto. For purposes of this Affiliate definition, "Control" means either: (a) that fifty percent (50%) or more of the controlled entity's shares or ownership interest representing the right to make decisions for such entity are owned or controlled, directly or indirectly, by the controlling entity; or (b) the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a corporation or other entity whether through ownership of voting securities, by contract, or otherwise. For the avoidance of doubt and without limiting the foregoing, Affiliates of the Coriant Defendants include without limitation Coriant International Group LLC and all direct and indirect subsidiaries of Coriant International Group LLC.

OYST_INF00001785 (Final Executed Agreement Between Oyster Optics and Coriant)

# June 28, 2018 - Oyster Optics, LLC Signed this Contract

1.1. "Affiliate" means any Person, now or in the future, which: (i) is under the Control of a Party hereto; or (ii) has Control of a Party hereto; or (iii) is under common Control with a Party hereto. For purposes of this Affiliate definition, "Control" means either: (a) that fifty percent (50%) or more of the controlled entity's shares or ownership interest representing the right to make decisions for such entity are owned or controlled, directly or indirectly, by the controlling entity; or (b) the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a corporation or other entity whether through ownership of voting securities, by contract, or otherwise.  For the avoidance of doubt and without limiting the foregoing, Affiliates of the Coriant Defendants include without limitation Coriant International Group LLC and all direct and indirect subsidiaries of Coriant International Group LLC.

OYST_INF00001785 (Final Executed Agreement Between Oyster Optics and Coriant)

Dated: 6/28/18

**Oyster Optics, LLC**

By:

Name: BRUCE K. LAGERMAN

Title: MANAGER

OYST_INF00001785 at OYST_INF00001795 (Signatures)

39